479 A.2d 962

The ASSOCIATION OF PENNSYLVANIA STATE COLLEGE
AND UNIVERSITY FACULTIES, et al., Appellees,

v.

The STATE SYSTEM OF HIGHER EDUCATION,
et al., Appellants.

AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL–CIO, etc., Appellees,

v.

COMMONWEALTH of Pennsylvania, et al., Appellants.

JOINT BARGAINING COMMITTEE OF the
PENNSYLVANIA SOCIAL SERVICES
UNION, et al., Appellees,

v.

COMMONWEALTH of Pennsylvania, et al., Appellants.

Dennis J. SOLECKI, et al., Appellees,

v.

COMMONWEALTH of Pennsylvania, et al., Appellants.

Supreme Court of Pennsylvania.

Argued May 15, 1984.

Decided July 6, 1984.

James J. Kutz, Allen C. Warshaw, Deputy Attys. Gen., for appellants.

Bruce M. Ludwig, Richard Kirschner, Philadelphia, for appellee Joint Bargaining Committee.

Elliot A. Strokoff, Harrisburg, for appellee Ass'n of Pa. State College, et al.

Stuart W. Davidson, Philadelphia, for appellee AFSCME.

Anthony C. Busillo, II, Harrisburg, for appellee John T. Long, et al.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is a direct appeal from an order of the Commonwealth Court declaring unconstitutional and permanently enjoining the enforcement of an amendment to the State Employees' Retirement Code ("Code"), 71 Pa.C.S. § 5101 *et seq.*, requiring each member of the State Employees' Retirement System ("System") to contribute an additional one and one-quarter percent (1¼%) of his or her wages to the System's Retirement Fund, insofar as it applied to employees who were members of the System prior to that amendment's effective date. We agree with the Commonwealth Court that the enactment unconstitutionally impaired the contract rights of all existing members of the System and, therefore, we affirm.

### I.

### A.

The Code mandates that all state employees not explicitly exempted participate in the System. 71 Pa.C.S. § 5301(a). Section 5501 of the Code provides that "[r]egular member contributions shall be made to the [State Employees' Retirement F]und on behalf of each active member for current service." 71 Pa.C.S. § 5501. The "regular member contribution" rate is defined as "[t]he product of the basic contribution rate [X] the class of service multiplier if greater than one [X] the compensation of the member." 71 Pa.C.S. § 5102. The "basic contribution rate" is set at five percent (5%) with the proviso that "in no case shall any member's rate, excluding the rate for social security integration credit, be greater than his contribution rate on the effective

date of [the Code] so long as he does not elect additional coverage or membership in another class of service." *Id.* Contributions are deducted from each member's wages and deposited in the Retirement Fund. Active members of the System accrue one "eligibility point" per year of service, 71 Pa.C.S. § 5307,[1] and become eligible to vest their retirement benefits upon the accumulation of ten such "points." 71 Pa.C.S. § 5309 (Supp.1984–85).

The Commonwealth and other employers whose employees are members of the System are required to make such contributions to the Retirement Fund on behalf of all active members as may be necessary to maintain the actuarial soundness of the Fund. 71 Pa.C.S. §§ 5507–5508.

## B.

Act 31 was signed into law on July 22, 1983. Section 7 of that Act, which amended the Code,[2] provided as follows:

### § 5505.1. Additional member contributions

In addition to regular or joint coverage member contributions and social security integration contributions, contributions shall be made on behalf of each active member, regardless of class of service, at the rate of 1¼% of compensation until such time as the actuary certifies that all accrued liability contributions have been completed in accordance with the actuarial cost method provided in section 5508(b) (relating to actuarial cost method).

71 Pa.C.S. § 5505.1.

The one and one-quarter percent (1¼%) "additional member contribution" was deducted from members' pay beginning on or about August 10, 1983.

1. Section 5307 provides in addition:
   A member shall accrue an additional two-thirds of an eligibility point for each year of Class D-3 credited service. In the case of a fractional part of a year of credited service, a member shall accrue the corresponding fractional portion of eligibility points to which the class of service entitles him.
   71 Pa.C.S. § 5307.

2. Pursuant to section 16(c) of the Act, all amendments to the Code were effective immediately. Act 1983–31, § 16(c), 1983 Pa.Legis.Serv. 222, 254.

Petitions for review were filed in the Commonwealth Court by appellees, members of the System and their collective bargaining representatives, challenging the constitutionality of section 7 and seeking preliminary and permanent injunctive relief against its implementation.[3] The actions were eventually consolidated, and the parties, after entering into a stipulation of facts, filed cross-motions for summary judgment. Following argument before the Commonwealth Court *en banc*, appellees' motion was granted. As a result of that ruling, the Commonwealth was permanently enjoined from collecting pension contributions in excess of the five percent (5%) basic contribution rate from employees who were members of the system prior to the enactment of Act 31 and ordered to refund, with interest, any such payments already assessed. *American Federation of State, County and Municipal Employees, AFL–CIO v. Com.*, 80 Pa.Cmwlth. 611, 472 A.2d 746 (1984). This direct appeal followed.

## II.

### A.

The basis of appellees' challenge to section 7 was that it represented a legislative impairment of their contract rights violative of Article I, section 10 of the United States Constitution [4] and Article 1, section 17 of the Pennsylvania consti-

---

**3.** The Commonwealth Court granted a preliminary injunction on September 2, 1983, ruling that any appeal by the Commonwealth would not act as an automatic supersedeas under Pa.R.A.P. 1736(b). *American Federation of State, County and Municipal Employees, AFL–CIO v. Commonwealth*, 77 Pa.Cmwlth. 37, 465 A.2d 62 (1983) (Memorandum Opinion of Crumlish, P.J.). The Commonwealth did in fact file a notice of appeal accompanied by an application for reinstatement of supersedeas pending appeal. That application was granted by this Court on September 15, 1983.

**4.** No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law; or Law impairing the Obligation of Contracts, or grant other Title of Nobility.
U.S. Const. Art. I, § 10.

tution.[5]   Before addressing the constitutional issues, however, we must determine the precise nature of the impact of section 7 upon the retirement benefits of the members of the System.

The parties have entered into several stipulations with regard to the effect of section 7.   First, assuming member contributions at the five percent (5%) rate, the Commonwealth would be required to contribute sixteen and seventy-seven hundredths percent (16.77%) of its employee payroll to the Retirement Fund for fiscal 1983–84 to maintain the actuarial soundness of the Fund.   The Commonwealth's 1983–84 budget reflects that assumption.   Section 7's requirement of an additional one and one quarter percent ($1\frac{1}{4}$ %) of each member's gross income would lower the Commonwealth's required contribution for fiscal 1983–84 by one percent (1%) to fifteen and seventy-seven hundredths percent (15.77%).   Second, none of the funds saved as a result of this one percent (1%) reduction would be transferred or applied to or used for the benefit of the System or its members.   Third, with the exception of an amendment to the definition of "total accumulated deductions" permitting a member to withdraw all contributions to the Fund, including the "additional member contribution," upon termination, Act 31 includes no amendment or addition to the level of pension benefits or the calculation of annuities provided to members under the Code.

The foregoing stipulations establish that the only effects of section 7 are to increase the contribution required of members and to save the Commonwealth one percent (1%) of its budgeted payroll.   The dollar amount of retirement benefits remain the same;   members are simply required to pay more for each pension dollar they will eventually receive.   Thus, section 7 is clearly detrimental to employees who were members of the System prior to section 7's

5.   No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.
Pa. Const. Art. I, § 17.

effective date in that it decreases the value of their retirement benefits in proportion to their contributions to the Fund.

## B.

The instant actions were brought on behalf of both vested and non-vested members of the System. Since this Court has been divided in the past on the issue of whether non-vested state employees are entitled to the same constitutional protections as vested employees, we shall consider the two classes separately.

The constitutional infirmity of section 7 with respect to members whose entitlement to retirement benefits had already vested is clear and need not detain us long.

The question of the permissibility of unilateral legislative changes in the established contractual rights of public employees who are members of a retirement system is not new to this Court. It has long been recognized in Pennsylvania that the nature of retirement provisions for public employees is that of deferred compensation for service actually rendered in the past, *Bellomini v. State Emp. Retirement Bd.*, 498 Pa. 204, 209, 445 A.2d 737, 739 (1982) (plurality opinion). *Accord, McKenna v. State Emp. Retirement Bd.*, 495 Pa. 324, 433 A.2d 871 (1981); *Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958); *Wright v. Retirement Board of Allegheny Co.*, 390 Pa. 75, 134 A.2d 231 (1957); *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953); *McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 199 A. 130 (1938); *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934).

And it is the law of this Commonwealth that unilateral modifications in the retirement system, after retirement eligibility requirements have been met, may not be adverse to the member. *See, generally, Catania v. Com.*

*State Employee's Retirement,* 498 Pa. 684, 450 A.2d 1342 (1982) (plurality opinion); *McKenna v. State Emp. Retirement Board, supra, Harvey v. Allegheny Co. Retirement Board, supra; McBride v. Allegheny Co. Retirement Board, supra; Retirement Board of Allegheny Co. v. McGovern, supra.*

*Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board,* 501 Pa. 293, 297, 461 A.2d 593, 595 (1983) (plurality opinion).

Since section 7 reduces the value of members' retirement benefits, it is unquestionably a unilateral modification in the System adverse to its members and is void as applied to employees whose contractual rights were vested prior to its enactment.

C.

The conclusion that section 7 is unconstitutional as applied to employees who were members of the System but whose retirement benefits had not yet vested as of the effective date of Act 31 is also unavoidable. In *Catania v. Commonwealth, State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982), this Court was evenly divided on the question of whether unilateral changes in the terms or conditions of the retirement contract which inure to the detriment of employees whose benefits have not vested violates the constitutional prohibition against the state's impairment of the obligation of contracts. Three Justices were of the view that such changes were permissible as to non-vested employees provided the detrimental changes enhance the actuarial soundness of the retirement fund and are offset by comparable new advantages. *Id.,* 498 Pa. at 687, 450 A.2d at 1343 (opinion of O'Brien, C.J., in Support of Denial of Summary Judgment, joined by Roberts and Hutchinson, JJ.). The three other participating Justices would have held that the state's unilateral reduction of retirement benefits was an unconstitutional impairment of

the employment contracts of non-vested as well as vested employees. *Id.*, 498 Pa. at 705, 450 A.2d at 1353 (Opinion of Nix, J., in Support of Grant of Summary Judgment, joined by Larsen, J.); *Id.*, 498 Pa. at 708, 450 A.2d at 1354 (Opinion of Larsen, J., in Support of Grant of Summary Judgment); *Id.* (Opinion of Flaherty, J., in Support of Grant of Summary Judgment, joined by Larsen, J.).

It is clear that section 7 must fall under either standard advanced in *Catania*. The record simply does not support the Commonwealth's contention that section 7 enhances the soundness of the Fund "by definition." The stipulations of the parties establish that section 7 merely shifts some of the financial burden of contribution from the employer to the employees. Moreover, Act 31 contains no offsetting advantages to the members of the System. Thus, under the view expressed in the Opinion in Support of Denial of Summary Judgment filed in *Catania*, section 7 is an unconstitutional impairment of contract.

Under the reasoning of the Opinions in Support of Grant of Summary Judgment in *Catania*, which we now adopt as the better view, section 7's unilateral devaluation of the retirement benefits of non-vested members would be prohibited absolutely without regard to the Commonwealth's claim of actuarial enhancement:

> Accepting the principle that the state's duty to maintain the fiscal integrity of the retirement fund through actuarial soundness is a valid basis for *some changes in a retirement system,* nevertheless, the state's unilateral reduction of retirement benefits arising from the employment contracts cannot pass constitutional muster and must fall.

> *Catania v. Commonwealth, State Employees' Retirement Board, supra,* 498 Pa. at 707–708, 450 A.2d at 1354 (Opinion of Nix, J., in Support of Grant of Summary Judgment, joined by Larsen, J.) (footnote omitted; emphasis in original).

*See Id.,* 498 Pa. at 708, 450 A.2d at 1354 (Opinion of Flaherty, J., in Support of Grant of Summary Judgment, joined by Larsen, J.); *McKenna v. State Employees' Retirement Board,* 495 Pa. 324, 334, 433 A.2d 871, 876 (1981) (Nix, J., concurring); *Id.,* 495 Pa. at 335, 433 A.2d at 877 (Larsen, J., concurring, joined by Flaherty and Kauffman, JJ.); *Id.,* 495 Pa. at 336, 433 A.2d at 877 (Flaherty, J., concurring); *Wright v. Allegheny County Retirement Board,* 390 Pa. 75, 134 A.2d 231 (1957); *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A.2d 231 (1953); *see also Bardens v. Board of Trustees of Judges Retirement System,* 22 Ill.2d 56, 174 N.E.2d 168 (1961); *Campbell v. Michigan Judges Retirement Board,* 378 Mich. 169, 143 N.W.2d 755 (1966); *Sylvestre v. State,* 298 Minn. 142, 214 N.W.2d 658 (1973); *Miles v. Tennessee Consolidated Retirement System,* 548 S.W.2d 299 (Tenn. 1976); *Wagoner v. Gainer,* 279 S.E.2d 636 (W.Va.1981).

Accordingly, the Order of the Commonwealth Court is affirmed. The supersedeas entered September 15, 1983 is vacated.

HUTCHINSON, J., filed a concurring and dissenting opinion.

HUTCHINSON, Justice, concurring and dissenting.

I continue to adhere to the views expressed by former Chief Justice O'Brien in his Opinion in Support of Denial of Summary Judgment in *Catania v. Commonwealth, State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982). Moreover, as the majority concedes, the result in this case would be the same under either of the views expressed in *Catania.* I therefore believe the majority's attempt to adopt a so-called contract theory in this case on pensions is an unfortunate dictum.