**PITTSBURGH BOARD OF EDUCATION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DANCHO), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2003.
Decided Oct. 30, 2003.

---

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Pittsburgh Board of Education (Employer)[1] appeals the decision of the Workers' Compensation Appeal Board (Board) reversing the decision of the Workers' Compensation Judge (WCJ) giving Employer credit for disability pension benefits paid to Daniel Dancho (Claimant) from the combined contribution of the Commonwealth of Pennsylvania (Commonwealth) and Employer.

Claimant worked as an audiovisual technician for Employer. He sustained a work-related, lumbosacral sprain for which he received temporary total disability benefits.[2] While the claim petition was in litigation, Claimant began receiving disability retirement benefits from the Public School Employees' Retirement System (PSERS) totaling roughly $888 per month from November of 1998 to June of 1998 and $907 per month from July of 1998 through May of 2001.

On November 15, 1999, Employer filed a termination petition alleging that Claimant was fully recovered from his injury as of July 12, 1999,[3] and that Employer was entitled to a credit for benefits received by Claimant from PSERS under Section 204(a) of the Act, 77 P.S. § 71(a). At the hearing in May of 2001, even though all the parties assumed that the Commonwealth and Employer contributed separately to PSERS, the WCJ found that Employer was entitled to credit for the

David H. Dille, Pittsburgh, for petitioner.

Bernard J. Sweer, Pittsburgh, for respondent.

1. Employer is a self-insurer under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Claimant received $401 per week based on an average weekly wage of $601 per week.

3. Finding the testimony of Paul Lieber, M.D. credible, the WCJ concluded that Claimant was fully and completely recovered and granted the termination effective July 1999. This issue was not preserved for the Board's review and is not at issue on appeal.

amounts contributed by it (the school district) and by the Commonwealth because she concluded that Employer was an agent of the Commonwealth and the school district and the Commonwealth were the "employer" for purposes of Section 204(a).[4] Section 204(a) of the Act provides, in pertinent part, as follows:

> The severance benefits paid by the employer directly liable for the payment of compensation and the **benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation** which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). (Emphasis added.)

77 P.S. § 71.[5]

Claimant appealed to the Board contending that the school district was not entitled to a credit for contributions made by the Commonwealth to PSERS. The Board agreed with Claimant and reversed, relying on our then recent decision in *Township of Lower Merion v. Workers' Compensation Appeal Board (Tansey)*, 783 A.2d 878 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 745, 798 A.2d 1294 (2002), holding that the Commonwealth was not the "employer" directly liable for compensation for purposes of Section 204(a), and that the employer was entitled to a credit only to the extent that the employer contributed to the pension, which did not include the Commonwealth contributions. Employer appeals from that determination.[6]

In *Lower Merion*, a municipal employee (police officer) was injured at work and received workers' compensation benefits. In addition, he received a pension from the Township of Lower Merion Police Pension Fund which was funded in part by the Commonwealth. The Board held and this Court agreed that the employer was only entitled to offset the portion of the pension contributed by the employer and not by the Commonwealth. We stated as follows:

> This Court agrees with Claimant that the Board did not err in determining that third-party contributions to the pension fund, i.e., those made by an entity other than the employer directly liable for the payment of compensation, should not be used for purposes of calculating a pension offset against workers' compensation benefits. We agree with Claimant that any other interpretation flies in the face of the clear language of Section 204(a) of the Act. *See* Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not

---

4. The WCJ found that the combined contribution from Employer and the Commonwealth was approximately $62,000 (from 1996 to 1998) and $64,000 (from 1998 through 2001). Thus, Employer was entitled to a credit of approximately $11,000 for the 1996–1998 period and $20,000 for the 1998–2001 period. To recoup the overpayment, Employer was entitled to a suspension of benefits for 113 weeks. On May 23, 2001, the WCJ issued a supersedeas decision reducing the amount of Claimant's benefits by $66.49 per week. The WCJ also credited Employer an additional $66.49 per week for May 23, 2001 to November 8, 2001 (the date of the decision in this

case) to reflect the contribution of the Commonwealth.

5. In this case, Claimant was receiving temporary total disability benefits pursuant to Section 306(a) of the Act, 77 P.S. § 511. Accordingly, the credit provision of Section 204(a) of the Act applies.

6. Our review is plenary because this appeal presents a question of law. *Kmart Corp. v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000).

to be disregarded under the pretext of pursuing its spirit.")

*Lower Merion,* 783 A.2d at 881.

Employer argues, however, that because a local school district is an agent of the Commonwealth created to carry out the Commonwealth's responsibility under Article III, § 14 of the Pennsylvania Constitution [7] of providing a "thorough and efficient" education, the Employer and the Commonwealth are one and the same for purposes of defining "employer" under Section 204(a) of the Act. In making this argument, Employer cites to our Supreme Court's holding in *Pennsylvania Federation of Teachers v. School District of Philadelphia,* 506 Pa. 196, 484 A.2d 751 (1984), which held that school districts and the Commonwealth were engaged in a common enterprise to provide pensions, stating:

The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth. Pa. Const. Art. III, § 14. Section 14 thus places the responsibility of providing public education on the legislature. In meeting its responsibility the General Assembly has established a comprehensive legislative scheme governing the operation and administration of public education. Those local agencies created to administer the system have been delegated broad powers. See generally, Act of March 10, 1949, P.L. 30, art. II, §§ 201 et seq., as amended, 24 P.S. §§ 2–201 et seq. As an agent of the state the school district contracts on behalf of the Commonwealth with its employees for membership in the Public School Employees' Retirement System.

Under the law of agency a contract made by an agent acting within the scope of its delegated authority is considered a contract of the principal. The school districts are clearly within their delegated authority in entering employment contracts with their teachers. See 24 P.S. §§ 2–211, 11–1106, 11–1121. Thus the state is a party to the contract under which the public school teachers become members of PSERS. As a party to these contracts the state cannot unilaterally modify their terms.

*Id.* at 200, 484 A.2d at 753–54 (internal citations omitted).

The question then becomes if the Commonwealth and school districts are in common enterprise for pension purposes, are both the local school district and the Commonwealth "employer[s] directly liable for compensation" entitled to a credit under Section 204(a) of the Act.

While school districts were created by the Commonwealth to provide educational services, the Commonwealth provides significant funding to school districts to provide that education, and they both are engaged in a common enterprise to provide pensions, the Commonwealth is not the employer directly liable for compensation. If that were so, the Commonwealth would be obligated for the underlying workers' compensation claim, which it is not. Section 204(a) of the Act is clear that the "employer directly liable for compensation" is entitled to a credit to the extent it funds a pension plan, not to the extent funded by a third-party contributor. Because, based on the facts and record before us, it was assumed that the Commonwealth was contributing directly to the PSERS fund, Employer would not be enti-

---

7. Article III, § 14 of the Pennsylvania Constitution provides in part as follows:

[T]he General Assembly shall provide for the maintenance and support of a thorough

and efficient system of public education to serve the needs of the Commonwealth.

Pa. Const. art. III, § 14.

tled to credit for the Commonwealth's contributions. As we held in *Lower Merion,* third-party contributors are not transformed into co-employers liable for the underlying compensation simply by virtue of their contributions to a pension fund.

An issue that was not raised before the WCJ, the Board, or in the briefs but was raised for the first time at oral argument is that the Public School Employees' Retirement Code, 24 Pa.C.S. §§ 8101–8535 (Retirement Code), sets forth a different contribution scheme than the one in *Lower Merion.* As stated previously, both parties assumed before the Board and in their briefs that the Commonwealth and school districts made separate contributions to

PSERS. It appears, though, that before June 30, 1995, contributions were to be made into the PSERS pension fund by "active members" of PSERS,[8] employers[9] and the Commonwealth,[10] the latter two each contributing in equal shares. After June 30, 1995, it appears that employees and employers have continued to make contributions to the fund, but the Commonwealth has not been permitted or required to make contributions on behalf of active members who "are employees of employers that are school entities[.]" *See* 24 Pa.C.S. § 8326. Instead, such employers contribute to the pension fund and their contributions are then paid or reimbursed by the Commonwealth.[11] Under

---

8. Section 8321 of the Retirement Code provides as follows:

 Regular member contributions shall be made to the fund on behalf of each active member for current service except for any period of current service in which the making of such contributions has ceased solely by reason of any provision of this part relating to the limitations under IRC § 401(a)(17) or 415(b).
 24 Pa.C.S. § 8321.

9. Section 8327(a) states the general rule for employer contributions:

 Each employer ... shall make payments to the fund each quarter in an amount equal to one-half the sum of the percentages, as determined under section 8328 (relating to actuarial cost method), applied to the total compensation during the pay periods in the preceding quarter of all its employees who were members of the system during such period, including members on activated military service leave. In the event a member on activated military service leave does not return to service for the necessary time or receives an undesirable, bad conduct or dishonorable discharge or does not elect to receive credit for activated military service under section 8302(b.1)(3) (relating to credited school service), the contributions made by the employer on behalf of such member shall be returned with valuation interest upon application by the employer.
 24 Pa.C.S. 8327(a).

10. Section 8326(a) of the Retirement Code provides as follows:

 The Commonwealth shall make contributions into the fund on behalf of all active members, including members on activated military service leave, in an amount equal to one-half the amount certified by the board as necessary to provide, together with the members' contributions, annuity reserves on account of prospective annuities as provided in this part in accordance with section 8328(a), (b), (c) and (e) (relating to actuarial cost method). In case a school employee has elected membership in a retirement program approved by the employer, the Commonwealth shall contribute to such program on account of his membership an amount no greater than the amount it would have contributed had the employee been a member of the Public School Employees' Retirement System.
 24 Pa.C.S. § 8326(a).

11. Section 8535 provides as follows:

 For each school year beginning with the 1995–1996 school year, each school entity shall be paid by the Commonwealth for contributions based upon school service of active members of the system after June 30, 1995, as follows:
 (1) The Commonwealth shall pay each school entity for contributions made to the Public School Employees' Retirement Fund based upon school service of all active

that method of payment, school districts are obligated to PSERS, not the Commonwealth, even though the Commonwealth then reimburses the school district for the pension contributions that the school district made, much like other school expenses such as transit costs or special education. Because this issue was not raised below, we will not address it in this case.

Accordingly, the Board's decision is affirmed.

### ORDER

AND NOW, this *30th* day of *October,* 2003, the order of the Workers' Compensation Appeal Board dated January 24, 2003, at No. A01–3249, is affirmed.

members, including members on activated military service leave, whose effective dates of employment with their school entities are after June 30, 1994, and who also had not previously been employed by any school entity within this Commonwealth an amount equal to the amount certified by the Public School Employees' Retirement Board as necessary to provide, together with the members' contributions, reserves on account of prospective annuities, supple-mental annuities and the premium assistance program as provided in this part in accordance with section 8328 (relating to actuarial cost method), multiplied by the market value/income aid ratio of the school entity. For no school year shall any school entity receive less than the amount that would result if the market value/income aid ratio as defined in section 2501(14.1) of the Public School Code of 1949 was 0.50.

24 Pa.C.S. § 8535.